UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NENG SAYPAO PHA,

            Petitioner,

      v.

GARY SWARTHOUT, Warden,

            Respondent.

No.  2:13-cv-1133 MCE GGH

ORDER & FINDINGS AND RECOMMENDATIONS

*Introduction and Summary*

      Petitioner claims that he was unfairly denied discovery into his claim for juror misconduct, and that this federal court, sitting in habeas corpus jurisdiction, should make up for that detriment, as well as hold an evidentiary hearing assuming that discovery would turn up actionable facts.  Habeas jurisprudence after the passage of AEDPA[1] complicates the request.

      For the reasons set forth below, discovery and an evidentiary hearing are denied.  Because the outcome here directs the outcome for the merits of the petition, the undersigned recommends that the petition be denied.

/ / /

---

[1]  Antiterrorism and Effective Death Penalty Act, specifically here, 28 U.S.C. section 2254.

1  *Background*

2      The underlying facts concerning the crimes are not important to the outcome here, but the

3  charges and counts of conviction play a role in analyzing the discovery/juror misconduct issues

4  presented.  The California Court of Appeal concisely summarized the charges and counts of

5  conviction/acquittal/deadlock:

6          Defendant Neng Saypao Pha was charged with eight crimes against
           his wife: (1) assault with a firearm (count one); (2) inflicting
7          corporal injury (counts two, six, and eight); (3) making a criminal
           threat (counts three and seven); (4) false imprisonment (count four);
8          and (5) dissuading a witness (count five).

9          The jury found defendant guilty of one count of inflicting corporal
           injury (count two), one count of making a criminal threat (count
10         three), and the false imprisonment charge (count four). It
           deadlocked on the charge of assault with a firearm and one count of
11         inflicting corporal injury. The jury found defendant not guilty of the
           charge of dissuading a witness, one count of inflicting corporal
12         injury, and one count of making a criminal threat. The jury also
           found that defendant personally used a firearm in committing
13         counts three and four. The trial court sentenced defendant to an
           aggregate term of 15 years in prison.
14

15  People v. Pha, 2011 WL 6882938 *1 (2011).

16  *Issues*

17      The underlying claim for which discovery is sought is a type of "juror misconduct."

18  Petitioner asserts that one juror, who had disclosed in voir dire that she had been molested in her

19  youth, became so affected and biased by the prosecution's presentation of the case, that her

20  memories of the incident overwhelmed her such that she lost all objectivity in reviewing the

21  evidence in this case.  Petitioner believes that this juror was either dishonest when she related in

22  voir dire that she could fairly view the evidence, or became unduly biased during the course of

23  trial, resulting in a Fifth Amendment due process violation and/or Sixth Amendment right to jury

24  trial violation.[2]  Petitioner seeks discovery, and presumably an evidentiary hearing afterwards, to

25  discover the extent of bias, if any, and also the extent to which she shared her life's experience

26  _____

27  [2]  A biased juror claim could fall under the rubric of due process, see Irvin v. Dowd, 366 U.S.
    717, 81 S.Ct. 1639, or the Sixth Amendment right to jury trial, see Smith v. Philips, 455 U.S. 209,
    224 102 S.Ct. 940 (1982) (O'Connor, J concurring)  In this case the exact derivation of the
28  federal claim is not important—the claim presented is a federal claim.

2

with other jurors.  The issues as raised by the parties are:

1.  Whether discovery can ever be had in a habeas proceeding on any claim other than a Brady claim;

2.  Assuming an affirmative answer to issue 1 above, whether discovery in a federal habeas is governed by the Cullen v. Pinholster standards[3] announced for evidentiary hearings, or pre-AEDPA discovery standards;

   a.  Do the standards for evidentiary hearings announced in Cullen v. Pinholster apply to federal habeas discovery;

   b.  If so, whether the state court discovery ruling was a *de facto* ruling "on the merits;"

3.  Whether in either event, discovery and/or an evidentiary are to be allowed.

*Background to the Juror Misconduct Issue*

The California Court of Appeal set forth the necessary factual background for discovery into the juror misconduct issue:

> During voir dire, one of the prospective jurors notified the court and counsel that there was a matter relating to someone who had been a victim of a crime, which she did not "think ... would effect (sic) the case" but which she wanted to discuss in private. Outside the presence of the rest of the prospective jurors, she disclosed that she "was molested when [she] was little." In response to questions from the court, she said the molestation was not reported and there was never an arrest, and she did not think it would have anything to do with the case. Defense counsel declined the opportunity to ask any further questions, and in response to a question from the prosecutor, the prospective juror said she had "sensitivity to children and sexual assault," but she did not think it would affect her ability to be fair and impartial as long as the evidence of any type of sexual misconduct did not involve a child.

> This prospective juror was eventually selected as Juror No. 12.

> The jury returned its verdicts and was dis-charged on February 18, 2010, and sentencing was set for April 5. On March 1, Juror No. 12 sent an e-mail to the prosecutor, addressing him by his first name and stating as follows:

> "I sat on [defendant's] jury and feel compelled to send you an e-mail....I have thought about the whole jury duty experience and the

---

[3]  Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388 (2011).

thing I always come back to is how I felt watching you be the victim[']s advocate."

"Not sure if you even remember me, I spoke in private about being molested when I was young....I have never really thought about bringing charges against the person who did it ....until I sat on the jury and watched you prosecute the case against [defendant]."

"You had a profound impact on my life....In a truly positive way. There were times during the trial that I imagined you building a case against the person who molested me. You were amazing with the victim and her daughter. There were times through-out the trial when you would have a look of disgust on your face (relating things the defendant did to his wife) and I would imagine you doing the same for me. (I really did pay attention ... not just imagine!) There were countless times that I would 'try on' the idea of holding the person accountable....It felt powerful and healing!"

"I am curious about how you ended up in the Domestic violence department ... do you have a 'personal interest'? Or was it just by happen stance....You were such a strong advocate that it leads me to believe you have some personal investment. However, I have never sat on a jury before so maybe that is just your job?"

"I did not want to 'write' you ... probably because I don't want you to think I am a DORK. You must be a very busy man. I tried for over a week to convince myself that you don't have time to read e-mails from former jurors. I just kept feeling like I should let you know what a profound impact you had on me."

"I won't ever bring charges against the person who hurt me when I was a child, but on some level I think God used you to heal a part of me. Just the thought of you defending me the way you did the victim has gone deep into my soul."

"So ... THANK YOU for what you do! And please know you impact not only the designated victim but also other victims who are fortunate enough to watch you in action!"

"Thanks for your time."

A week later, on March 8, the prosecutor forwarded the e-mail to the court and defense counsel "out of an abundance of caution." On March 23, based on the e-mail, defense counsel filed a petition for an order disclosing the addresses and telephone numbers of the jurors so that he could "prepare a motion for new trial based on jury misconduct." On March 26, defense counsel filed a motion to continue the sentencing so that he could "fully investigate juror misconduct." Counsel asserted that the e-mail from Juror No. 12 was "prima facie evidence of juror misconduct." Counsel indicated he would "be requesting the trial court send letters to the jurors as was done in" *People v. Tuggles* (2009) 179 Cal.App.4th 339 and would "also ask [that] an evidentiary hearing be set in the future after the jurors have an opportunity to respond to the Court's letter."

A hearing on the petition to disclose juror identifying information was held on the date originally set for sentencing. Defense counsel argued that "there [wa]s a prima fa[cie] case" for disclosing the information because the "e-mail clearly show[ed] that while the trial was in progress, before the defense had even had a chance to put on witnesses, this particular juror made up her mind that [defendant] was guilty." The prosecutor responded that "[t]here isn't anything close in this case to a prima fa[cie] showing of juror misconduct." The trial court concluded that the juror "did not withhold any relevant information in the course of voir dire," and "[t]o the extent [her e-mail] indicate[d] the juror was somewhat taken with [the prosecutor], there [wa]s no indication ... that it had any effect on her deliberations in this case." The court specifically noted "[t]here [wa]s nothing in the text of the [e-mail] that suggest[ed] any improper consideration of evidence, or even that her personal feelings were shared with the other jurors." The court further stated that it could not "find evidence here that the juror ignored evidence, that she failed to deliberate, that she had a bias that was undisclosed, or that she had a bias either for the victim or against the defendant that rose to the level so that she could not fairly and objectively consider the evidence and participate in deliberations with the other jurors." Finding that "there ha[d] not been a prima fa[cie] showing of good cause made for release of" the juror information, the court denied defendant's petition. Sentencing was then continued to April 30.

On April 20, defendant filed a new trial motion on the ground of juror misconduct, asserting that the e-mail showed that Juror No. 12 had "violated her oath as a juror and the Court's many admonitions." The court denied that motion.

On appeal, defendant contends "it was error for the trial court to deny the defense request for identifying information about the jurors, at least without sending out a letter or questionnaire to the remaining jurors." We disagree.

People v. Pha, at*12-14.

The appellate court first enunciated the standard set forth in Cal. Code Civ. Proc. section 237 which governed the release of juror information for discovery purposes. In a nutshell, petitioner was required to demonstrate a *prima facie* good cause for disclosure of the juror identification [which might then lead to further contact on the subject of juror misconduct]. Of course, the good cause was to be established by a *prima facie* showing of juror misconduct. The appellate court went on to find that the e-mail sent by the juror demonstrated no sharing of her experiences with the other jurors, and despite the somewhat bizarre e-mail, misconduct-through-sharing was only speculation.

/ / /

5

1    *Discussion*

2        A. Is Federal Habeas Discovery Limited to Alleged Brady Violations

3        The short answer is no.  Assuming the appropriateness of discovery in the first place, the

4    breadth of discovery is as broad as federal habeas claims which depend upon a factual context.

5    The breadth of discovery, as opposed to the standards allowing it whatever the topic, were not

6    affected by the passage of AEDPA.

7        Respondent asserts that discovery is limited, if appropriate in the first place, to alleged

8    Brady violations, but does not cite supportive authority for that proposition.  The one case cited,

9    Kelley v. Wofford, 2014 WL 1330639 (E.D. Cal. 2014) is inapposite.  Kelley was a case where

10   the initial *claim* was an alleged failure to produce impeaching material.  The district court first

11   properly found that the state equivalent of the federal Brady/Giglio claim was not actionable in

12   federal habeas.  Then discussing the federal Brady claim, it found that under *federal standards* the

13   speculative nature of the federal claim did not warrant discovery.

14       Such is not the case here.  Petitioner advances a juror misconduct claim whose factual

15   basis may require discovery, if appropriate under federal standards.  The undersigned cannot find

16   any authority to support the proposition that despite the need and appropriateness of discovery,

17   the topic is off limits *per se* for habeas discovery.  Moreover, nothing in the statutory AEDPA

18   section, 28 U.S.C. 2254, references such a topical limitation.  In light of the absence of statutory

19   directive, cases like Bracy v. Gramley, 520 U.S. 899, 117 S.Ct.1 793 (1997), permitting discovery

20   into a judicial bias claim, would still have full force and effect (as modified by Cullen v.

21   Pinholster, see infra).  Finally, Habeas Rule 6 has not been modified at all to impose any topical

22   limitation on habeas discovery—an unlikely scenario, if AEDPA or some other event had so

23   truncated the breadth of habeas discovery.

24       Discovery, or no discovery, in this case is dependent on procedural discovery standards,

25   not substantive, topical titles.

26       B. Do the Cullen v. Pinholster Standards for Evidentiary Hearings Apply to Discovery

27            Requests as Well

28       The answer to this question is found by analyzing two discrete issues: whether the

6

1    Pinholster standards fit a request for discovery in habeas; and whether the state court decision

2    below upholding the denial of discovery was a *de facto* ruling on the merits, a *sine qua non* for

3    application of Pinholster.

4         Case law and reason indicate that discovery, the acquisition of extra-record facts, is

5    cabined by the same Pinholster standards as for evidentiary hearings/expansion of the record.

6         First, controlling case law equates the two scenarios for purposes of Pinholster

7    application.  See Runningeagle v. Ryan, 686 F.3d 758, 773-774 (9th Cir. 2012) (Pinholster

8    governs discovery, expansion of the record and evidentiary hearings); *cf* Dietrich v. Ryan, 740

9    F.3d 1237, 1246-47 (9th Cir. 2013) ( discovery permissible as Pinholster not applicable to

10   discovery request because the focus of discovery was on a procedural default defense, not on a

11   claim decided on the merits).  See also Rogers v. Swarthout, 2015 WL 468169 *2 (N.D. Cal.

12   2015); Hodge v. White, 2015 WL 205216 (E.D. Ky. 2015); Lewis v. Ayers, 2011 WL 2260784

13   (E.D. Cal. 2011)

14        Second, it only stands to reason that discovery, if directed to the merits of a claim, should

15   be guided by Pinholster.  What would be the purpose of acquiring extra-record facts if they could

16   not be used in the federal habeas proceeding?  The question answers itself—no purpose.  Nor

17   does the federal court sit as the discovery court for possible, further state proceedings.  The state

18   court in this case determined that no discovery was appropriate.  It is not up to the federal court to

19   overrule that decision, reviewing it *de novo*, for the purpose of giving the state courts the

20   discovery they did not desire in the first place. [4]

21        The case of Gonzalez v. Wong, 667 F.3d 965 (9th Cir. 2011) does not point to the

22   contrary, and indeed confirms that the federal courts may not utilize extra-record evidence before

23   assessing whether the state courts were AEDPA unreasonable on the record before them.  In that

24   _____

25   [4]  Nor could the scenario here be termed "an unreasonable fact finding process" such as to avoid
     the Pinholster strictures.  See Woods v. Sinclair, 655 F.3d 886, 903 (9th Cir. 2011), judgment
26   vacated on other grounds Woods v. Holbrook, 132 S.Ct. 1819 (2012).  As discussed below, the
     state court made a legal determination based on undisputed facts, and found that petitioner had
27   not stated a prima facie case on the merits to warrant further discovery.  Woods does not stand for
     the proposition that a state court must grant an evidentiary hearing or discovery every time a
28   petitioner asks for it.

1    case, petitioner had acquired significant extra-record facts with the aid of discovery granted by

2    the district court.  However, the propriety of that discovery order issued prior to <u>Pinholster</u> was

3    not contested.  When faced with this *fait accompli* post-<u>Pinholster</u>, but recognizing that it now

4    could not utilize the extra-record evidence, the Ninth Circuit thought it better to find the matter

5    unexhausted, and send it back to state court for further, possible proceedings.  This case does not

6    stand for the proposition that discovery orders are not governed by <u>Pinholster</u>.  All it stands for is

7    that given the pre-<u>Pinholster</u> discovery, the Ninth Circuit was not going to simply close its eyes to

8    what it thought important evidence, albeit improperly produced.

9            Thus, petitioner's reliance on pre-<u>Pinholster</u> cases requiring an evidentiary hearing for

10   juror misconduct claims under old standards, quite more petitioner friendly than those of

11   <u>Pinholster</u>, are not applicable.  <u>Pinholster</u> applies to *all* requests for evidentiary hearing (and

12   discovery) no matter the subject of the claim; it worked a sea change in federal habeas corpus

13   practice.

14           However, <u>Pinholster</u> itself, as well as 28 U.S.C. section 2254(d), requires that the claim at

15   issue have been "decided on the merits," in order for its strictures to be applied.  The more

16   difficult question here is whether the state court decisions that did not permit juror identification

17   discovery were, in fact, decisions on the *merits*.  At first glance the state court decision to deny

18   discovery appears procedural only.

19           But, first appearances can be, and in this case are, deceiving.  The basis for the state

20   decision was its finding that petitioner had not made out a *prima facie* case for jury misconduct

21   *on the merits*.  When the merits are reached in order to make the underlying procedural ultimate

22   finding, the federal court should find that the merits were reached.  Indeed, in <u>Pinholster</u> itself at

23   131 S.Ct. at 1402 n.12, the Supreme Court held that: "Under California law, the California

24   Supreme Court's summary denial of a habeas petition on the merits reflects that court's

25   determination that the claims made in th[e] petition do not state a prima facie case entitling the

26   petitioner to relief."  Here, the state appellate court and trial court found that petitioner had not

27   stated a prima facie case for relief on his jury misconduct claim sufficient to require more

28   discovery.

1    This not the case where discovery was denied because some merely procedural

2    requirement was unsatisfied so as to direct the result of the decision, e.g, not timely made.

3    Rather, the situation here is similar to that of Lee v. Commissioner, Alabama Dept. of

4    Corrections, 726 F.3d 1172 (11th Cir. 2013), in which petitioner had not timely raised all his

5    Batson issues in the state trial court.  The new claims were reviewed under a procedural

6    standard—Alabama's plain error rule.  Nevertheless, because in applying the plain error standard,

7    the state appellate court had reviewed the underlying merits of the new issues, the Eleventh

8    Circuit found that the state courts had reached the merits of the issues for AEDPA purposes.  Id at

9    1208.  In reaching its determination, the court looked to its cases finding that a denial of a habeas

10   claim under state heightened fact pleading rules, much like the case here, qualified as a ruling on

11   the merits for AEDPA purposes.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1331

12   (11th Cir.2012); Frazier v. Bouchard, 661 F.3d 519, 524–27 (11th Cir.2011); Borden v. Allen,

13   646 F.3d 785, 812 (11th Cir.2011); Powell v. Allen, 602 F.3d 1263, 1272–73 (11th Cir.2010);

14   Peoples v. Campbell, 377 F.3d 1208, 1223–24, 1235–37 (11th Cir.2004).

15   Moreover and importantly, the undersigned is bound by law of the case with respect to the

16   exhaustion finding previously made by the court in this case, i.e., that in ruling on the discovery

17   motion and finding an insufficient case on the merits to warrant juror discovery, the federal claim

18   of juror misconduct was exhausted in state court.  See ECF Nos. 19, 20.  By definition, a finding

19   of exhaustion means the merits of a claim were decided in the state court unless the issue was

20   decided on independent state grounds, i.e., independent of the merits of the federal claim, that

21   would invoke a procedural bar.  No such *independent of the merits* decision was made by the state

22   courts.  It cannot be the case that the merits of petitioner's jury misconduct claim were reached by

23   the state courts for AEDPA exhaustion purposes, but not reached for purposes of other AEDPA

24   application such as the ability to obtain evidentiary hearings or expand the record or for

25   discovery.  No case stands for such an illogical proposition.[5]  Even petitioner argues in the

26   / / /

27

28   
[5]  The only exception would be that posited by Gonzalez--a previous finding of exhaustion
eviscerated by the pre-Pinholster acquisition of new and possibly result-changing facts.

9

1    traverse that the Court of Appeal decision was unreasonable on the merits of his state claim.  ECF

2    No. 25 at 13.

3              C.  Were the Merits Decided Unreasonably By the State Appellate Court

4         No discovery (or evidentiary hearing) can be permitted under Pinholster unless the

5    decision of the state appellate court in this case was AEDPA unreasonable on the record before

6    it.[6]  If such a determination is reached, *both* sides could discover extra-record facts and present

7    them at an evidentiary hearing.  Lewis v. Ayers, *supra*.  The record has been extensively set forth

8    above.

9         The appellate state court decision was AEDPA reasonable insofar as it found that the

10   inference of Juror 12's communication to other jurors of her infatuation with the prosecutor in

11   terms of her own molestation "case," during deliberations was entirely speculative.  That is one of

12   the precise reasons why discovery was necessary (from petitioner's viewpoint) in the first

13   instance.  The undersigned rejects petitioner's contention that communication was the only

14   reasonable inference.  After all, the juror was embarrassed enough in the first place to ask the

15   judge that her voir dire be conducted in private.  Petitioner demonstrates nothing to show that this

16   inhibition was released later-- once she entered the jury deliberation room.  Even if the

17   communication to the other jurors of Juror 12's memories and impressions is a plausible

18

19   ───────────────────
     [6]  The Supreme Court has set forth the operative standard for federal habeas review of state court

20   decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an unreasonable application
     of federal law is different from an incorrect application of federal law.'"  Harrington, supra, 131

21   S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000).  "A state
     court's determination that a claim lacks merit precludes federal habeas relief so long as

22   'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786,
     citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

23      Accordingly, "a habeas court must determine what arguments or theories supported or . . could

24   have supported[] the state court's decision; and then it must ask whether it is possible fairminded
     jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

25   decision of this Court."  Id.  "Evaluating whether a rule application was unreasonable requires
     considering the rule's specificity.  The more general the rule, the more leeway courts have in

26   reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the stringency of this
     standard, which "stops short of imposing a complete bar of federal court relitigation of claims

27   already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a
     strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.,

28   citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

1   inference, the undersigned cannot say that the Court of Appeal was AEDPA unreasonable in

2   rejecting it.

3        But the above analysis does not end the matter.  The state court decision was potentially

4   unreasonable in the sense that the California Court of Appeal only reached one part of the merits.

5   Finding that an inquiry into the juror's thought process was improper, it only reached the issue of

6   whether the juror's feelings were shared with the other jurors.  Evidently, the Court of Appeal

7   would find no juror misconduct in the case where a juror did extensive on-her-own, outside of

8   court investigation/research on an evidentiary issue simply because she used the ill gotten

9   information only for her own deliberative thought process and did not share her misconduct with

10   the other jurors.  Even in this case, if it were to be found that the juror lied about her background

11   in voir dire, and she was actually biased, the Court of Appeal would apparently dismiss such

12   misconduct because discovery might delve into the juror's internal thought process in

13   deliberations.[7]

14        The Court of Appeal's decision of "mandated communication" in order for juror

15   misconduct to be present is in conflict with Supreme Court and other law that only one juror need

16   be biased before the right to jury trial before an impartial jury is violated.  See, e.g., Irvin v.

17   Dowd, 366 U.S. 717, 723, 81 S.Ct. 1961) (["This requires that a] juror [singular] can lay aside his

18   impression or opinion and render a verdict based on the evidence presented in court."); United

19   States v. Olsen, 704 F.3d 1172, 1189 (9th Cir. 2013); Dyer v. Calderon, 151 F.3d 970, 973 (9th

20   Cir. 1998) (en banc) ("The bias or prejudice of even a single juror" deprives a party of their right

21   to a fair and impartial jury).  It follows then that the biased juror need not communicate anything

22   to fellow jurors in order to still remain a single biased juror.

23        Certainly, not every influence to a juror's decision based on life's experiences is an

24   outside influence impermissible in the jury deliberation room.  Grotemeyer v. Hickman, 393 F.3d

25   871, 878-879 (9th Cir. 2004) (use by juror of her expert medical experience to judge evidence not

26

27   _____
     [7]  As evidenced by the appellate court's recitation for denial of the discovery motion in the trial
28   court, the trial judge did consider whether the juror's bias per se may have affected her ability to
     impartially consider the evidence.

1    misconduct).  On the other hand, when a juror's emotional reaction to the facts of a case based on

2    a previous life's experience becomes so manifest that it impermissibly biases that juror's

3    perception of the evidence, one has not received a trial by a neutral factfinder which is guaranteed

4    by the Sixth Amendment.  Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir. 1990) ("does this case

5    present a relationship in which the 'potential for substantial emotional involvement, adversely

6    affecting impartiality,' is inherent?")

7           This present petition does not involve "actual bias," or if it does, petitioner has not

8    established a prima facie case that the Court of Appeal was in error when it found that the juror

9    here did not lie at voir dire with respect to her ability to be fair and impartial.  Petitioner concedes

10   that Juror 12 was honest in revealing her potentially impartiality compromising molestation

11   incident, but argues, at times, that she purposefully hid the fact that she could not be impartial

12   because of it.  Establishing such mendacity is the first step along the way to prove actual bias.

13   McDonough Power Equip., v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 85 (1984).  Petitioner

14   has no evidence that this juror purposefully lied to the judge; rather the probable inference from

15   the circumstances is that the events at trial, including the prosecutor's presentation, unexpectedly

16   refocused Juror 12 on the facts of her own situation.  Certainly, the evidence of record suggests

17   that the juror's mindset was altered only after the voir dire and during the prosecutor's

18   presentation of evidence and questioning.  Petitioner even argues that the prosecutor's

19   "misconduct," occurring after voir dire, went a long way to establishing the juror's bias.  Thus,

20   petitioner fails at showing that the Court of Appeal would be AEDPA unreasonable if it accepted

21   this much more probable inference.  Petitioner cannot have discovery and an evidentiary hearing

22   based on speculation that the facts might favor his position.  See Elmore v. Sinclair, __F.3d__,

23   2015 WL 1447149 (9th Cir. 2015), accepting as AEDPA reasonable the Washington state

24   Supreme Court's finding that a juror's belief that his molestation incidents were not crimes

25   indicated that he fairly answered questions put to him at voir dire.

26          That leaves the "implied bias" theory described in Tinsley above, first referenced by

27   Justice O'Connor in her concurring opinion in Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940

28   (1982), and adopted by five justices in McDonough.  "Implied bias" is therefore "established

12

1    law" as announced by the Supreme Court.[8]

2          But for one fact, the undersigned might well be prepared to find that the Court of Appeals

3    was unreasonable in not finding implied bias (or even discussing it).  The juror's email was not

4    simply "unusual," but it was over-the-top- in terms of demonstrating that the juror had lost

5    objectivity in the trial at which she sat, and was myopically focused on the facts of *her* case, the

6    prosecutor "winning" her case, and vanquishing her molester.  True, the facts of petitioner's case

7    involved spousal abuse, and not molestation, but this difference, by the juror's own words, did

8    little to bring this juror back to reality—again, in the abstract.

9          Nevertheless, one must take all the relevant circumstances into account when analyzing

10   implied bias, and the fact that there was a unanimous acquittal of one count of spousal abuse, i.e.,

11   the affected juror voted in favor of the defendant, simply does not square with the picture of a

12   juror so biased by the facts of her own case, that her emotional state demonstrated implied

13   bias towards defendant as a matter of law.  At argument, petitioner's counsel stated that he

14   believed the split verdict clearly demonstrated a compromise verdict, but this argument is nothing

15   but educated speculation, but speculation nevertheless.[9]  As discussed above, speculation on

16   necessary facts does not permit habeas discovery nor an evidentiary hearing.  More importantly, it

17   does not demonstrate that a state court refusing discovery on this issue would be AEDPA

18   unreadable.

19   _____

20   [8]  In McDonough, Justices Blackmun, Stevens, and O'Connor concurring and Brennan and
     Marshal concurring in the judgment, all agreed that implied bias of a juror was a basis for

21   invalidating a jury's verdict.  The concurring opinions thus establish a majority of the Supreme
     Court on that point.  See Danforth v. Minnesota, 552 U.S. 264, 286, 287, 128 S.Ct. 1029, (2008);

22   Abdul–Kabir v. Quarterman, 550 U.S. 233, 253–54, 127 S.Ct. 1654, (2007); Vasquez v. Hillery,
     474 U.S. 254, 261 n. 4, 106 S.Ct. 617, (1986) (finding "unprecedented" an argument that a

23   statement of law by five justices, even if some justices were in dissent, "does not carry the force
     of law"); Horn v. Thoratec Corp., 376 F.3d 163, 176 n. 18 (3d Cir.2004) ("Thus, on the state

24   requirement issue, Justice Breyer joined with the four-member dissent to make a majority.")
     [9]  That is, it is speculation whether this juror's bias prompted her to engage in verdict

25   compromising, or whether she simply saw petitioner's guilt on some counts despite her own

26   experiences.  Moreover, whether other jurors compromised their verdict because of this one juror
     initially refusing to acquit is speculation.  Respondent is now correct that no inquiry would be

27   permitted into compromise verdicts, as opposed to a bias *per se* on account of the law which
     precludes inquiry into a jury's deliberative process.

28

1    Because, in the final analysis, taking into account the entire context, the undersigned

2    cannot find the Court of Appeal to be AEDPA unreasonable, Cullen v. Pinholster does not permit

3    discovery or an evidentiary hearing on the point of juror bias.  Elmore, supra.

4    *Final Disposition*

5    It makes little sense not to drop the other shoe, so to speak, and make a final ruling on the

6    merits of the petition.  That is, if this court were to start a ruling from scratch on the merits of the

7    petition, such would involve a repetition of the analysis on the merits herein.  Therefore, the

8    undersigned will recommend that the petition, with its one juror misconduct claim, be denied.[10]

9    *Conclusion*

10   Petitioner makes colorable arguments concerning the implied bias of Juror 12, but he has

11   not shown that the decision of the state courts rejecting those arguments was AEDPA

12   unreasonable.  Therefore, IT IS HEREBY ORDERED that petitioner's motion for discovery

13   and/or evidentiary hearing is denied.

14   IT IS HEREBY RECOMMENDED that the petition be denied.  However, a Certificate of

15   Appealability should issue on the juror misconduct (bias) claim.

16   These findings and recommendations are submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

18   after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21   shall be served and filed within fourteen days after service of the objections.  The parties are

22   / / /

23   / / /

24   / / /

---

25   [10]  Although the petition purported to raise other claims, i.e., prosecutorial misconduct and
26   ineffective assistance of counsel, petitioner's counsel herein made it clear that such were simply
     arguments relating to the juror misconduct claim, and not separate claims.  See ECF 19 at 4.
27   Moreover, a claim that a state court failed to hold an evidentiary hearing, although potentially
     relevant to a Pinholster analysis, is not a federal claim in and of itself.  The petition contains one
28   claim—that of juror bias.

14

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   Dated: April 20, 2015

4                                    <u>/s/ Gregory G. Hollows</u>

5                                    UNITED STATES MAGISTRATE JUDGE

15